Filed 3/13/13  Shane L. v. Super. Ct. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHANE L. et al., | |
| Petitioners, | |
| v. | |
| THE SUPERIOR COURT OF ORANGE COUNTY, | G047759 |
| | (Super. Ct. Nos. DP020774, DP020775) |
| Respondent; | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY et al., | O P I N I O N |
| Real Parties in Interest. | |

Original proceedings; petitions for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Deborah C. Servino, Judge. Petitions denied.  Requests for stay denied.

Law Office of J. Michael Hughes for Petitioner Peggy H.

Law Office of Patricia Smeets Rossmeisl and Patricia Smeets Rossmeisl for Petitioner Shane L.

No appearance for Respondent.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Julie J. Agin, Deputy County Counsel for Real Party in Interest Orange County Social Services Agency.

*       *       *

Mother Peggy H. and father Shane L., parents of David and Angel, now three- and two-years old respectively, seek extraordinary relief from the juvenile court's order terminating reunification services and setting a permanency hearing under Welfare and Institutions Code section 366.26 (all further statutory references are to this code). They also request us to stay the permanency hearing scheduled for March 27, 2013. Both contend there is insufficient evidence to support the court's finding the children could not be returned safely to their care. Father further argues Orange County Social Services Agency (SSA) did not provide reasonable reunification services. Finding no error, we deny both petitions and requests to stay the permanency hearing.

FACTS

In January 2011, mother gave birth to Angel in a convenience store parking lot. Both parents claimed not to know mother was pregnant and admitted to daily marijuana use. Angel tested positive for marijuana and had trouble breathing and poor coloring. He suffered brain damage and an infection requiring intense antibiotic treatment. David was found in a dirty, cluttered house with numerous potentially toxic chemicals within his reach. The court detained the children finding them at risk due to parents' ongoing drug use, ordered reunification services, and authorized drug testing and three visits a week.

2

Parents' reunification plans included counseling, 12-step meetings, an outpatient substance abuse program, and drug testing, and provided that a missed test would be treated as a positive result. By the time of the combined jurisdiction and disposition hearing in April, mother had completed parenting education and parents regularly tested negative for drugs with the exception of father having one diluted test that counted as positive. But parents' participation in the case plan was sporadic and they consistently attended only one visit a week. The court sustained an amended petition alleging parents' use of illegal drugs placed the children at risk of injury or illness, declared the children dependents, and added conjoint counseling to the case plan to address co-parenting and communication issues.

For the six-month review, SSA reported parents had failed to consistently drug test, participate in their services, or visit the children. They missed over half of their visits with David, who had been diagnosed with institutionalized subtype autism, and two-thirds of their visits with Angel, who was receiving services for hearing loss. They showed limited progress during conjoint therapy, did not "work well together," missed two sessions, and their prognosis was "not great." They were also unemployed and periodically homeless, living with mother's sister, in shelters, or with a friend in Hemet. The court found parents had made minimal progress in mitigating the causes of removal and granted additional reunification services.

Parents showed improvement in their case plans by the original date of the 12-month review. They attended their health care agency (HCA) programs with mother beginning phase 4 and father completing phase 3. Parents were more consistent in attending visits with the children but they often left early and did not use the skills taught in their parenting classes. They appeared overwhelmed, brought unhealthy snacks, and father sometimes played with the children too roughly without intercession by mother. SSA recommended ways to make the quality and safety of the visits more productive and enjoyable and informed their conjoint therapist of the issues occurring during visitation.

3

The therapist reported he would continue to discuss those issues during therapy and that parents had made some improvement but still required encouragement to obtain a stable residence and employment. The court continued the hearing date.

By the date of the continued hearing less than a month later, SSA's position changed from there being a "[s]ubstantial probability of return by the [18-month] [r]eview," to recommending termination of reunification services and the setting of a section 366.26 permanency hearing. Parents did "not appear capable of applying the things they have learned into their real life interactions with their children." They did not understand David's autism diagnosis or have any interest in learning how to provide for him. Despite invitations to attend David's autism therapy sessions (ACES), father went to only one and mother did not go to any. They did not grasp the concept David was on a special nutritious diet and constantly tried to feed him junk food. They laughed and made fun of him, called him names when he exhibited unusual behavior or reactions, and would not accept that he had autism. Parents remained unemployed and without stable housing. The court found parents' progress was moderate, ordered additional reunification services, and amended the case plan to include a referral to a parenting coach or adaptive behavior therapy during visits. According to the social worker, it was decided in court that parents' participation in David's ACES program would be substituted for a parenting coach.

For the 18-month review in July 2012, SSA again recommended termination of reunification services and the setting of a permanency hearing. Parents had improved their parenting skills and understanding of how to care for the children and "addressed the elements of their case plans, but not in a consistent and complete manner." Although both completed drug treatment, mother dropped out of the aftercare component in June claiming she was too busy with work and missed four drug tests the previous two months, which were considered positive, while father did not graduate or receive a certificate because he was unable to pay the fees, despite consistently testing negatively.

4

Mother was employed and living in a group home, but father continued to live with mother's sister and remained unemployed. Both showed improved communication in their conjoint therapy but still required assistance in co-parenting and after two extensions the sessions were terminated due to minimal progress and missed sessions, including the entire month of June.

Parents began attending David's ACES sessions, observing and interacting. Although mother missed sessions due to her work schedule, "when she does attend, she is attentive and tries to learn the techniques that are being taught," whereas father is often distracted and "fails to pay attention" at the sessions or during visits. The quality of parents' visits improved after they started attending the ACES sessions, with mother correcting father if she believed he was endangering the children. Nevertheless, parents still had to be redirected at times. Additionally, father often became preoccupied with playing with toys and not fully focusing on the children.

By the end of August, father had obtained employment, but was homeless. Although the quality of parents' visits had improved, parents' visited sporadically through November and they continued to need redirection. They also showed an increase in missed drug tests. Although they claimed it was due to their work schedules, SSA noted they normally worked in the afternoons, leaving their mornings available for testing. Neither parent had a suitable home or a plan for caring for the children. Parents missed many of the children's appointments that would have helped them understand their medical and developmental issues, including Angel's appointments for a hearing aid, speech assessment, or needs evaluation. Parents did not believe David had autism and neither attended a workshop to help them understand the diagnosis despite the discounted rate SSA obtained for them.

After numerous continuances, the court held the 18-month review hearing in late November. Mother testified she worked about 15 hours a week up until two weeks before the hearing, when she began working 20-30 hours, and acknowledged

5

"there was always a point in time during the day that [she] could have gotten to the testing facility"; she did not know why she and father often missed tests on the same days. She stayed sober by attending N.A. meetings, talking to her sponsor, and going to 12-step meetings for six to nine months. She had been working on step 3 "for a couple months" but doesn't remember what that entails.

Mother missed programs and appointments because she needed two weeks notice to request a day off but if the children were returned to her she "would be able to work [her] . . . schedule around the appointments." Although she could have asked for a work schedule that would allow her to attend the children's regularly scheduled therapy appointments, she forgot to do so. Nor did she ask the conjoint therapist for a regular schedule so both she and father could ask for the time off together. Although she went to some of Angel's appointments, she missed many because she forgot or did not write it down.

Father testified he no longer attended the 12-step meetings and never made it past step 2 because he did not believe he had a problem. He spoke to his sponsor "once every blue moon." He missed 25 percent of his visits because of work, the buses "running awkward," or "just fail[ing] to call and confirm the visit." He acknowledged he stopped working in mid-September but falsely told the caretakers he missed visits due to work. He missed the bus sometimes because "time flies when you're busy" "cleaning, playing with my nephews and nieces or just hanging out with [his] brother-in-law." Although he knew his case plan required him to attend all of the children's appointments, he did not do so because he did not write them down and he could not get a written list. He acknowledged Angel's caretaker did give him all of the appointment times and locations and he "ha[d] no excuse for that. Those were [his] fault."

After testimony from also the social worker and their conjoint therapist, the court found a significant risk to the children if returned to the care of parents, who "failed to participate and make substantial progress" in their programs notwithstanding two

6

extensions. Despite the case plans' requirements to stay sober and comply with all testing, and the provisions therein that a missed test is considered a positive one, parents missed about 20 percent of the tests and failed to show adequate knowledge of, or that they could provide for, the children's special needs. The court determined reunification services had been provided, with SSA giving two extensions of the conjoint therapy, services to help parents learn how to address the children's special needs, and arranging for reduced rates for the workshop. Parents had made only moderate progress toward mitigating the causes necessitating placement and there was no substantial probability the children would be returned safely to their custody. Accordingly, the court terminated reunification services and set a section 366.26 hearing.

DISCUSSION

*1. Substantial Evidence of Risk to Children*

At an 18-month review hearing, children must be returned to the physical custody of the parents unless the juvenile court finds by a preponderance of the evidence that it "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).) A parent's failure "to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid*.) We review the court's ruling for sufficiency, viewing the evidence in a light in support of the order (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401) and do not reweigh evidence or reconsider the court's findings of credibility (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319).

Parents contend the court's ruling is not supported by substantial evidence because they completed their drug programs and parenting classes, and participated in conjoint therapy. But although both completed their drug treatment programs, mother

7

stopped attending the aftercare component claiming she was too busy with work. Additionally, during the most recent reunification period, both missed a number of drug tests claiming it was due to their work schedules. Yet mother testified she worked only 15 hours up until two weeks before the hearing, while father admitted he was not employed when he missed the drug tests in September and October.

Parents acknowledge they missed a number of drug tests but argue that does not mean they were currently using. They point to evidence the social worker was not concerned they were using drugs or alcohol, both had sponsors, and mother was attending weekly N.A. Both, however, stipulated to case plans providing that missed tests would be considered positive. And unlike *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, relied on by father, the record contains substantial evidence of other areas of noncompliance.

Parents' case plans included the requirement they participate in a 12-step program. Mother was only on step 3 and could not recall steps 2 or 3 or explain why she and father missed testing on the same days. Father never progressed beyond step 2, had stopped going to the meetings, and talked to his sponsor only "once in a blue moon." Parents' failure to make substantive progress in the court-ordered 12-step program constitutes prima facie evidence returning the children would be detrimental. (§ 366.22, subd. (a).)

Parents also failed to complete their court-ordered conjoint therapy. Their therapist reported they made only minimal progress after nine months and had poor attendance, missing all of the June appointments. After two extensions, the therapy was terminated at the therapist's recommendation.

Nor did parents comply with their case objectives of showing they knew the children had special needs and the ability to provide or obtain the care they needed, much less attend all of the children's appointments. Father did not believe David's autism diagnosis and parents inconsistently and only alternately attended his ACES therapy

8

sessions. Their reason for not attending the children's appointments was they forgot or did not write them down.

Substantial evidence supports the court's ruling returning the children to parents care "would create a substantial risk of detriment to the[ir] safety, protection, or physical or emotional well-being . . . . " (§ 366.22, subd. (a).)


*2. Provision of Reasonable Services*

Court-ordered reunification services may not be extended beyond 18 months from the date the child was removed from the parent's physical custody unless the juvenile court finds "there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . within the extended time period or that reasonable services have not been provided to the parent . . . ." (§ 361.5, subd. (a)(3).)

Father contends he did not receive reasonable reunification services because the social worker did not (1) ask him to complete another parenting class despite believing his parenting skills remained deficient; (2) provide him a parent coach as ordered by the court; and (3) extend conjoint therapy notwithstanding the therapist's belief parents could realistically meet their goals with two more months of therapy. We are not persuaded.

SSA must tailor a reunification plan to fit the circumstances of the family in question and to eliminate the conditions leading to the juvenile dependency proceeding. (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.) Here, the plan included programs designed to help parents with the drug problems and to be better parents, the deficiencies that led to the children's removal.

The services offered need only be reasonable, not perfect. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 48.) On appeal, we review a determination reasonable services have been provided to a parent for substantial evidence. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010, superseded by statute on another ground as

9

recognized in *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504.) We may not reweigh or resolve conflicts in the evidence but must defer to and construe all reasonable inferences in favor of the court's findings (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199; *In re Julie M.*, *supra*, 69 Cal.App.4th at p. 46).

None of father's complaints show he did not receive reasonable services. He forfeited his claims regarding SSA's failure to re-refer him to another parenting class and the substitution of ACES sessions for the parenting coach by not raising them in the trial court. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) We also note the social worker testified without rebuttal that it was agreed in court the ACES program would be substituted for a parenting coach. The court could have reasonably concluded parents agreed to the substitution.

As to not extending his conjoint therapy for two more months, the therapist acknowledged there would be "[n]o complete turnaround" in their co-parenting goal within that time frame and although parents had made "some progress," it was "not significant." Further, parents had already been granted two extensions within which to complete their conjoint therapy, and failed to attend any sessions in June, despite father being unemployed and mother working only 15 hours a week. Father made no showing the same would not happen with another extension.

Father asserts the social worker should have done more to assist the therapist, such as provide copies of his reports and feedback on visits. But the therapist acknowledged he received a 9-page report from the social worker with the initial referral and never asked for additional ones from either the social worker or parents. Additionally, the social worker reported the therapist "ha[d] been informed of the issues that occur during visitation, and he will continue to discuss them during the therapy sessions." The court apparently gave weight to this evidence, which we will not reweigh. Moreover, even if the social worker could have done more, the services need not be

perfect, only reasonable, and in this case they were. The court did not abuse its discretion in concluding reasonable services were provided.

## DISPOSITION

The petitions and requests to stay the permanency hearing are denied.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

11