Filed 9/23/13  In re K.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063861 |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1058D) |
| v. | |
| RICARDO L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Ricardo L. seeks review of a juvenile court order directing the San Diego County Health and Human Services Agency (Agency) to supervise visitation with his three-year-old daughter, K.L., once a month. Ricardo is incarcerated pending trial on charges that he committed sexual acts with K.L.'s eight-year-old half sister. He contends his statutory and constitutional rights were violated when the juvenile court limited his visitation with his daughter to once a month, and any reduction in visitation is not supported by substantial evidence. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Ricardo and Maria G. are the unmarried parents of K.L., who is now three years old. Maria also has three older children, a son and two daughters. Ricardo and Maria separated in November or December 2011.

In January 2012, Maria's eight-year-old daughter, V.M., disclosed that Ricardo raped and sodomized her on several occasions, starting when she was seven years old. During the course of the sexual abuse investigation, the Agency learned that Ricardo often hit the children, including two-year-old K.L. Maria reported ongoing incidents of domestic abuse.

The Agency detained the children in protective custody and filed petitions under Welfare and Institutions Code section 300[1] on their behalf. The juvenile court found that K.L. had suffered, or was at substantial risk of suffering, serious physical harm from

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

physical abuse by her father.[2]  (§ 300, subd. (a).)  At the dispositional hearing, the juvenile placed K.L. in foster care and ordered a plan of reunification services for Ricardo and Maria.  Ricardo's plan included supervised visitation services with K.L.

In August 2012, the Agency reported that Ricardo consistently visited K.L.  According to the foster mother, K.L. returned from the visits in good spirits and was always eager and happy to see her father.  Ricardo appeared to be appropriate with K.L. and interacted well with her.  He brought food, clothing and toys for K.L. to the visits.

On September 6, 2012, San Diego police arrested Ricardo and charged him with four counts of committing a sex crime with a child age 10 years or younger.  (Pen. Code, § 288.7, subds. (a) & (b).)  Ricardo's bail was set at $500,000.  He was not eligible for release due to his immigration status.

At the six-month review hearing, which was held on September 12, 2012, the juvenile court ordered that Ricardo may have supervised visits with K.L. in accordance with the rules of the facility in which he was incarcerated.  Because of Ricardo's status as a protective custody inmate, he was not able to participate in court-ordered services or have contact visits with K.L.  Ricardo had one visit with K.L. in November 2012, and two visits per month in February and March 2013.

According to the social worker, K.L. responded well to her father but it was difficult for him to keep her attention through the glass partition.  She did not want to

---

[2]     K.L.'s older half siblings were adjudicated dependents of the juvenile court on grounds of failure to protect, sexual abuse and risk of sexual abuse.  (§ 300, subds. (b), (d) & (j).)  They were placed with their paternal grandparents.

hold the telephone to speak to Ricardo. K.L. would become restless during the visits, which lasted from 20 to 30 minutes.

Maria complied with her case plan. In February 2013, the Agency placed K.L. in Maria's care on a 60-day visit. At the end of March, the social worker made plans to return Maria's son to her care. Maria's relationships with her two older daughters were strained, but she continued to work toward family reunification with them.

The 12-month review hearing was held on April 12, 2013. Ricardo was present and represented by his attorney. The juvenile court returned K.L. to Maria's care under a plan of family maintenance services and ordered that the placement remain confidential. Ricardo requested enhancement services[3] and a calling card, and asked that his visits with K.L. occur as frequently as possible.

Maria was uncomfortable supervising K.L.'s visitation with Ricardo. She did not want her address and telephone number disclosed to him. The Agency asked the court not to require the social worker to supervise visits because the case was no longer in reunification, and the Agency wanted to decrease its involvement in the case.

Ricardo said he was not opposed to a third party supervising visitation. He objected to any reduction of his weekly visits with K.L. Ricardo argued his visitation should not be reduced because there was no evidence to show that the visits were

---

[3] "Enhancement services are child welfare services offered to the parent not retaining custody, designed to enhance the child's relationship with that parent." (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1.)

detrimental to K.L. and no one had filed a section 388 petition seeking to modify the prior visitation order.

The juvenile court said Maria had the right, for her and her children's privacy and protection, to refuse to facilitate contact and visitation between Ricardo and K.L. Ricardo was entitled to have some visitation with his daughter. However, the court could not order weekly visits because there might not be anyone available to facilitate them. The court asked Ricardo to work with the social worker to identify a third party who could assist with visitation and ordered the Agency to provide an ex parte report with additional information about visitation. The court ordered the Agency to facilitate visitation once a month. The court said it would set a special hearing if the information in the ex parte report indicated the visitation order should be modified.

On May 2, the social worker reported that she met with Ricardo. He did not have any family members who could facilitate visitation. He knew several former coworkers who might be suitable but did not have contact information for them or his previous employer. Ricardo said he would try to obtain that information.

The record does not indicate that a special hearing was set to address visitation. Ricardo filed a notice of appeal on May 3, 2013.

## DISCUSSION

### A

Ricardo contends the Agency did not provide notice to him that it would raise the issue of visitation at the 12-month review hearing, and the visitation order violated his statutory and due process rights. He contends the juvenile court erred when it modified

5

visitation because the Agency did not comply with notice requirements under section 293, which require that the notice contain a statement regarding any change in custody or status being recommended by the supervising agency. Ricardo states the court should have required the Agency to file a section 388 petition to modify the previous visitation order. He also argues the reduction in visitation is not supported by substantial evidence.

B

We are not persuaded by Ricardo's argument he did not receive adequate notice of the proposed changes to his visitation schedule. Although Ricardo objected to the order, he did not do so on the ground he did not receive proper notice under section 293. Accordingly, he has forfeited his argument the Agency did not comply with notice requirements under section 293. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222 [a party forfeits the right to claim error when he or she fails to raise the objection in the trial court].)

Even if the issue were not forfeited, we would reject Ricardo's argument that his statutory and constitutional rights to notice were violated. The record shows that Ricardo mischaracterizes the manner in which the issue of visitation was raised at the 12-month review hearing. The Agency did not propose a reduction in visitation at the 12-month review hearing. Instead, during closing argument, Ricardo requested more frequent visits and the use of a calling card to allow him to speak with K.L. Asked by the court to respond, the Agency noted that Maria's address and telephone number were confidential and she was uncomfortable supervising visitation. Further, because K.L. was in her mother's care, the Agency wished to lessen its involvement in the case. It asked Ricardo

6

to identify any third parties who were willing to facilitate visitation. The record shows that Ricardo received adequate notice of the 12-month review hearing, including notice of K.L.'s return to her mother's care and a report detailing problems arranging visitation, including Maria's reluctance to facilitate visitation.

C

Ricardo's argument that any reduction in visitation is not supported by substantial evidence is wholly without merit.[4] The trial court is afforded wide discretion to decide the terms and conditions of visitation, and its determination will not be disturbed in the absence of a manifest showing of abuse. (*In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 504; see also *In re S.H.* (2003) 111 Cal.App.4th 310, 317 [visitation orders must provide for flexibility in response to the changing needs of the child and to dynamic family circumstances].)

---

[4]      The record does not support Ricardo's contention his visitation was reduced from once a week to once a month. A visitation order provides the Agency with "broad 'guidelines as to the prerequisites of visitation or any limitations or required circumstances.' " (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1377, quoting *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.) The previous visitation order stated Ricardo "may have supervised visits with the minor in accordance with the rules of his facility." It did not specify frequency of visitation.

The record shows that after Ricardo was incarcerated, he had one visit with K.L. in November 2012. He then informed the foster mother he did not want visits. In December 2012 and January 2013, the social worker asked Ricardo to confirm his request. Ricardo indicated he wanted to visit K.L. When the social worker tried to arrange weekly visits, the detention facility would not allow Ricardo to have contact visits with K.L. On February 19 and 26, the social worker supervised visits between Ricardo and K.L., who were separated by glass and could speak only through a telephone. K.L. quickly became restless and the visits lasted only 20 to 30 minutes. There were two more visits in March. Thus the record shows that from early September 2012, when Ricardo was arrested, to the date of the 12-month review hearing, he had five or six visits with K.L. in an eight-month period.

The juvenile court was not responsible for the barriers to visitation caused by Ricardo's incarceration on charges of raping and sodomizing an eight-year-old child, and Maria's emphasis on protecting her and her children's privacy, and physical and emotional safety. The court made a true finding that Ricardo had sexually abused K.L.'s eight-year-old half sister V.M., including anal and vaginal penetration, oral copulation, fondling her breasts and exposing her to pornography, and that another half sister was at substantial risk of being sexually abused by Ricardo. If convicted of engaging in sexual acts with V.M., Ricardo would serve a sentence of 25 years to life (Pen. Code, § 288.7, subd. (a)) or 15 years to life (Pen. Code, § 288.7, subd. (b)). If released, he would be deported. K.L. had been returned to her mother's care and the Agency was not required to facilitate K.L.'s reunification with Ricardo.[5] The detention facility did not allow Ricardo to have contact visits with K.L., and she quickly became restless when Ricardo tried to interact with her behind a glass panel. In view of the circumstances, the juvenile court acted within its discretion when it ordered the Agency to facilitate visitation once a month. Because the record would support a finding of no visitation, error, if any, is harmless.

---

[5] The court ordered a reunification case plan for Ricardo before he was arrested and incarcerated on charges he committed sexual acts with a child 10 years of age or younger.

8

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.