Filed 4/5/16  T.G. v. Superior Court CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| T.G.,<br><br>        Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF SAN FRANCISCO CITY & COUNTY,<br><br>        Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Real Party in Interest. | A147202<br><br>(San Francisco City & County Super. Ct. No. J143169) |

T.G. (Father) petitions for extraordinary relief under California Rules of Court, rule 8.452, asking us to set aside the juvenile court's order terminating reunification services with his daughter, L.T. (Minor), and setting a hearing pursuant to Welfare and Institutions Code[1] section 366.26.  He contends the juvenile court erred in finding he was offered reasonable reunification services.  We shall deny the petition on the merits.

## I.  BACKGROUND

The San Francisco Human Services Agency (the Agency) filed a petition pursuant to section 300 on behalf of nine-year-old Minor on April 29, 2014, alleging she was at risk of physical harm because Father had repeatedly spanked her and thrown her across the floor, that her mother (Mother) had hit Minor with an open hand, and that Mother did

_____

[1] All statutory references are to the Welfare and Institutions Code.

1

not intervene to protect Minor from Father. The petition also alleged that the parents had hit Minor's younger brother, S.T. [2]

According to the detention report, Minor had reported twice that Father spanked her and threw her to the floor. Minor showed a social worker a swollen finger and said that it was injured when she tried to break her fall after Father threw her, and that she felt pain in her legs, back, and body. The abuse had been going on for two years. She said she was afraid of Father and that "every day he almost killed me when he gets really angry." Minor also told the social worker that Mother hit her with an open hand on her body, usually on her shoulder and that Mother did not intervene when Father was abusing her. Mother said she and Father did not know any other way to discipline their children because in their home country, Eritrea, hitting was the only form of discipline.

Father told the social worker he and Minor did not get along, that Minor was difficult, and that he did not understand what was wrong with her because she did not know how to stay quiet. He had been away from his family for years, and until the family joined him in America two years previously, he had not seen Minor for a long time. Father denied abusing Minor, but said that in his country, hitting was the only way to discipline children and it was not against the law.

Minor was living with a foster family and asked the social worker, "Can I live here forever?" When the social worker discussed the possibility of Minor returning home after a cooling-off period, Minor became hysterical and kept repeating, "I don't want to go home, I refuse to go home, my dad will hurt me again."

In the jurisdiction/disposition report, the Agency reported that Father and Mother said they had slapped Minor on only one occasion, a few days before the alleged incident of physical abuse on April 24, 2014. Mother acknowledged that physical discipline was practiced in their culture. The family was living in a family shelter. Minor was refusing to visit with or return to her parents.

---

[2] Mother is not a party to this writ proceeding.

On May 28, 2014, the juvenile court found true an allegation that Minor had been the subject of "inappropriate physical discipline" by Mother and Father, declared her a dependent, ordered her placed in foster care, and ordered reunification services. Those services were to include supervised therapeutic visitation for both Mother and Father.

In September 2014, Mother sought and obtained a temporary restraining order against Father based on allegations that Father had struck S.T. on the face out of anger, causing bruising around the boy's eye, and that Father had hit Mother many times and had kicked, slapped, and punched her. She had left the apartment she shared with Father and was staying in a domestic violence shelter.

In an October 2014 status review report, the Agency noted that Father had admitted hitting his wife and children and said he did not know what else to do when they would not listen to him or respect him. He wanted to learn new ways to cope with his anger in order to see his children again. Minor had been moved from foster care to the home of an aunt and uncle in July 2014.

Father's service plan required him to undergo individual therapy addressing "cultural differences and the use of non-physical disciplining methods." He was attending weekly individual therapy with an interpreter. His plan also required him to take a parent education program; however, there were no classes available in Father's native language, and the social worker was evaluating how to provide parenting education. He was not visiting with Minor because she had said she was afraid of him and did not want to see him. Because Minor did not want to have any contact with Father, he had not attended family therapy sessions. The report noted that Father did not recognize or understand how Minor and her brother were affected when he hit them and that he did not know any other way to respond when he felt disrespected.

At the six-month status review hearing on November 20, 2014, the juvenile court continued Minor in her placement with her relatives, found that reasonable services had been made to Mother and Father, found Father had made moderate progress toward alleviating the causes necessitating placement, and continued reunification services.

In a May 2015 twelve-month status review report, the Agency explained that Father was continuing to work with his therapist on his parenting skills and he had begun a parenting class. The therapist reported that Father was "diligent, participatory, and attentive, and his therapy was coming along." He had not had any visits with Minor. The social worker reported that Father had said he would not use physical discipline on Minor, but that "he d[id] not appear to completely understand the trauma that [Minor] ha[d] gone through and how it ha[d] affected her emotionally." He had expressed anger and frustration at not being allowed to see Minor. Minor had begun to express a desire to see Father, but the Agency explained that she would need to "address her fear of him and the trauma she has undergone due to his abuse" before beginning visits with him. Minor was "not consistent in her desire to see him," which the Agency concluded meant she was not yet ready for visits. Father was living in temporary housing, and had not been able to locate affordable housing. The Agency recommended that Mother and Father be provided an additional six months of reunification services and that the matter be continued to October 29, 2015 for the 18-month review.

Father moved to be granted visitation with Minor. On June 12, 2015, the juvenile court ordered that Father receive clinical supervised visitation with Minor, with one visit to take place by the end of June and two in the month of July.

At the 12-month review hearing on August 6, 2015, the juvenile court continued Minor in her out-of-home placement and found, as to Father, that reasonable efforts had not been made regarding visitation to prevent or eliminate the need for removal. The matter was set for another hearing on October 29, which the court stated was to be an 18-month review as to Mother, and a 12-month review as to Father.

The Agency prepared a status review report for the scheduled October 29, 2015 hearing. Minor remained with her aunt and uncle. Father had two jobs, was meeting his basic needs, and found time to visit with Minor. Father had been participating in supervised visitation with Minor since July. Minor had been uncomfortable during the early visits, but the visits had begun to go well. The clinician who supervised Father's visits with Minor said he was building a relationship with her but needed continued skill

4

building in a supervised setting. Father spent time with the clinician after visits, but was "unable to address [Minor's] trauma or such related issues in any depth." Minor wanted to continue visiting Father, and wanted the visits to be supervised.

Father had discontinued his therapy because he said he no longer needed it and he was too busy holding down two jobs. He also said his main goal in attending therapy had been to visit Minor, and he had "got what he wanted." The therapist reported that Father had been involved in therapy and was gaining some understanding of parenting. However, the Agency explained that Father still needed to learn how to manage Minor's feelings and had to "process what has happened in his past relationship with her."

Father had completed a parenting education program focused on the use of non-physical methods of discipline. He was living in a room in Oakland and had not obtained affordable housing suitable for himself and the children.

The Agency explained that Mother's visits with Minor went well, but that she did not yet have housing appropriate for Minor. Minor wanted to live with Mother, but was happy to stay with her aunt and uncle if she could not live with Mother. Minor's relationship with Father was "tentative," and she refused to live with him. The aunt had been approved for "KinGap guardianship." The Agency recommended that reunification services be terminated with the hope that Mother and Father would continue to make progress independently of court orders.

The hearing was continued and took place on December 30, 2015.[3] The social worker assigned to the case testified that Minor was happy in her relatives' care. Between May 2014, when the juvenile court initially ordered that Father receive supervised therapeutic visitation, and the 12-month review date of May 28, 2015, Father did not have any visits with Minor because she was not ready to see him. Minor was in therapy at the time, and one of the goals of the therapy was to encourage her to overcome

---

[3] Mother submitted on the Agency's recommendation. Her counsel informed the court that if she found suitable housing, she would return to court. The juvenile court and the Agency agreed that the only reason Minor could not yet be returned to Mother was her lack of an appropriate home.

her fear of Father so that she could visit with him. Sometime before the 12-month review date, Minor said she wanted to see Father. After the juvenile court granted Father's motion for visitation, they began visiting in late June, approximately twice a month. The visits had generally been "relatively good," but on two or three occasions, Father raised his voice and Minor became upset. Father and Minor hugged and were affectionate toward each other. Minor had said in September 2015 that she really liked visits with Father, and in October 2015 that her visits with Father were "great." The social worker's notes from an August 2015 visit said Father wanted to repair his relationship with Minor and that he was "self-motivated to get what he needs and find resources." In the social worker's opinion, Minor was making "some" progress regarding her fear of Father.

Father testified that his visits with Minor were now taking place once a week after Minor told the therapist she wanted to see him weekly. He thought the visits were going well, and he did not believe Minor was still afraid of him. He acknowledged that his past actions may have given Minor cause to fear him. Father had therapy for 10 or 11 months, beginning in October 2014. The therapy taught him how to care for his daughter. He discontinued the therapy because it was "taking too long," he believed he had received enough benefit, and he was having problems with transportation. He had learned from the therapy that he could not discipline his children physically the way he did in his home country. When he was considering ending the therapy, his therapist told him, "[I]t's up to you. If you don't want to get your children back, it's up to you, you can make the decision."

The juvenile court terminated reunification services to Father, found there was no substantial possibility Minor could be returned to Father within 18 months from removal, found by clear and convincing evidence that reasonable services had been provided to Father, and set a selection and implementation hearing pursuant to section 366.26 for May 3, 2016.

## II. DISCUSSION

Father contends the evidence does not support the juvenile court's finding that he received reasonable reunification services and that the court erred in terminating services.

6

## A. Standard of Review

"In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Moreover, "we must . . . recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances. [Citation.]" (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.)

## B. Statutory Scheme

Section 361.5, subdivision (a)(1)(A) provides that, with exceptions not applicable here, the juvenile court must order reunification services for 12 months after a child over the age of three is placed in foster care. These services may be extended up to 18 months after removal from parental custody if it is shown, at the 12-month permanency hearing pursuant to section 366.21, subdivision (f), "that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian." (§ 361.5, subd. (a)(3).)

Similarly, section 366.21, subdivision (g)(1) provides that if court-ordered services have been provided for at least the time set forth in section 361.5, subdivision (a)(1) and the child is not returned to parental custody at the 12-month permanency planning hearing, the court may continue the case for up to six months for a permanency review hearing, "provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. *The court shall continue the case only if it finds* that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and

7

safely maintained in the home within the extended period of time *or that reasonable services have not been provided to the parent or legal guardian*." (Italics added.)

If the case is continued, the permanency review hearing must take place within 18 months of the time the child was removed, and the court must order the child returned to the parent or legal guardian unless the court finds that return would create a substantial risk to the child. (§ 366.22, subd. (a)(1).) "The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid*.) In limited circumstances not present here, the court may continue the case for an additional six months. (§ 366.22, subd. (b).) Except in those circumstances, at the 18-month permanency hearing, " 'the authority of the juvenile court to set a section 366.26 hearing is *not* conditioned on a reasonable services finding.' [Citation.]" (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504 (*Earl L.*).)

### C. Analysis

Father contends the juvenile court's finding that he was offered reasonable services is not supported by the evidence. For this contention, he points out that for 13 months, he was unable to visit Minor despite the court's order that he receive therapeutic visitation; he also points out that the court found at the 12-month review that he had not been offered reasonable services. According to Father, the juvenile court should have offered him an additional six months of services at the December 30, 2015 hearing.

The Agency argues that—although the juvenile court referred to the December 30, 2015 hearing as a 12-month hearing as to Father—the hearing was in fact an 18-month hearing and, under section 366.22, the juvenile court did not have discretion to order additional services even if Father had not been provided with reasonable services. (*Earl L.*, *supra*, 199 Cal.App.4th at p. 1504.) In any case, according to the Agency, even if a finding of reasonable services was required, the juvenile court's finding was supported by substantial evidence.

8

We agree with the Agency that the statutory scheme does not contemplate a "second" 12-month review hearing more than 18 months after removal. Rather, the December 30, 2015 hearing, which took place 19 months after Minor was removed, is properly viewed as an 18-month hearing pursuant to section 366.22. (See *In re Brian R.* (1991) 2 Cal.App.4th 904, 918 [by virtue of passage of time, 12-month review becomes 18-month permanency planning hearing].) At such a hearing, the juvenile court may order a section 366.26 hearing even in the absence of a finding of reasonable services. (*Earl L.*, *supra*, 199 Cal.App.4th at p. 1504; § 366.22, subd. (a)(3).)

In any case, even assuming the hearing was a 12-month hearing, at which the court may continue the case if reasonable services have not been provided (§ 366.21, subd. (g)(1)), the court's finding of reasonable efforts was supported by substantial evidence. As Father points out, the remedy for failing to provide reasonable reunification services is an order providing for further services. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 975.) Here, the juvenile court did just that. The court found at the six-month hearing in November 2014 that Father had been provided reasonable services. In early August 2015, the court found that because of the lack of visitation, Father had not received reasonable services. The court had already remedied the situation by ordering that Father receive visits with Minor. At the time of the August hearing, Father had been visiting with Minor for just over a month. By the time of the order terminating services, he had been visiting with Minor for six months pursuant to the court's order. The visits had generally been good, but Father had raised his voice on two or three occasions during the visits, upsetting Minor, who was afraid of Father when he became angry. There was evidence that Father needed additional therapy as his visitation progressed in order to understand Minor's feelings and to process what had happened in his past relationship with her; moreover, Father's therapist told him he should continue with therapy if he wished to reunify with Minor. He nevertheless stopped attending the therapy. On this record, the juvenile court could reasonably conclude Father was offered reasonable services.

9

### III. DISPOSITION

The petition is denied on the merits.  (§ 366.26, subd. (*l*)(1)(C); Cal. Rules of Court, rule 8.452(h); *In re Julie S.* (1996) 48 Cal.App.4th 988, 990–991.)  The request for a stay of the May 3, 2016 hearing is denied.  Our decision is final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____

Rivera, J.

We concur:


_____

Reardon, Acting P.J.


_____

Streeter, J.

11