Filed 8/31/21  H.M. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Juvenile court, rule 8.1115(a), prohibits juvenile courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| H.M.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MONTEREY COUNTY,<br><br>    Respondent;<br>_____<br>MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | H049136<br>(Monterey County Super. Ct.<br>Nos. 19JD000121; 19JD000122) |

**THE COURT[1]**

H.M. (Mother) is the mother of A.V.M. and J.P.M.  The Monterey County Department of Social Services (Department) filed a petition under Welfare and Institutions Code section 300, subdivision (b) on October 11, 2019, alleging that the children were in danger based on the failure of Mother to protect them from sexual abuse perpetrated by J.P.M.'s father (Father).[2]

At the 18-month review hearing, the juvenile court terminated reunification services for Mother and set the matter for a selection and implementation hearing on September 14, 2021.  (§ 366.26.)

_____

[1] Before Greenwood, P.J., Grover, J. and Danner, J.

[2] All statutory references are to the Welfare and Institutions Code.

Mother petitions this court for an extraordinary writ, arguing that the juvenile court erred by refusing to extend reunification services for six months. Mother also requests a stay of the section 366.26 hearing.

For the reasons set forth below, we deny the petition and the request for stay.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Fourteen-year-old A.V.M. and eleven-year-old J.P.M were adjudged dependents of the juvenile court in November 2019 following a report that A.V.M., who was developmentally delayed, was being sexually abused by Father. The abuse allegations dated back to 2018. When A.V.M. reported the abuse to Mother, Mother did not believe A.V.M. Mother continued to deny the allegations of abuse even after the Department filed the section 300 petition and the juvenile court detained the children.

Following the juvenile court's order, Mother began to participate in reunification services. Mother completed a mental health assessment and was diagnosed with bipolar disorder and attention deficit/hyperactivity disorder. During the assessment, Mother denied responsibility for the removal of her children and blamed her eldest daughter for making allegations of sexual abuse.

Mother started her parent education course in January 2020 but would not tell the social worker what she had learned from the course and did not provide a certificate of completion for the course. Mother also joined the parent education group in 2020; however, her participation was minimal, and she often complained about the Department removing her children.

Mother maintained contact with the Department; however, she was often angry and confrontational. Mother refused to take any responsibility for her children's removal. Mother requested a change of social worker and threatened to sue the Department many times.

---

[3] We carefully considered the complete record in this case and include only those facts that are relevant to the issues presented in this petition.

### A. *Contested Six-Month Review Hearing*

The six-month review hearing was held in June 2020. The Department recommended that reunification services be continued for Mother, and that the children remain dependents of the juvenile court. The Department noted that Mother had been participating in aspects of her reunification plan but remained confrontational and unaccepting of any responsibility for the children's removal.

At the conclusion of the hearing, the juvenile court ordered the dependency to continue and that Mother receive six more months of reunification services.

### B. *Contested 12-Month Review Hearing*

In preparation for the contested 12-month review hearing, the Department prepared a report recommending that services be terminated for Mother, and that the matter be set for a section 366.26 hearing. The Department noted that Mother had made minimal progress and still did not understand the reason for the dependency.

Father was arrested and charged with felony child molestation for the abuse he perpetrated on A.V.M. Despite the arrest, Mother continued to contact Father by phone and sent him money and care packages while he was incarcerated. She indicated that she would allow J.P.M. to have contact with Father, that the child would not be at risk because she was Father's biological daughter, and that it was J.P.M.'s choice to determine whether she would be with Father. She continuously expressed frustration regarding the removal, stating she was the "non-offending" parent.

Mother did not have stable housing and was living with various family members and friends. She was employed and maintained contact with the Department. Mother consistently attended therapy. The social worker was concerned about the efficacy and quality of the therapy, fearing that the therapist had become "emmeshed" with Mother. The therapist appeared to have composed a safety plan for the children as required by the Department that Mother could not independently recount, and became "overly

3

emotional" when informed at a Department meeting of the possibility that services for Mother might be terminated.

Mother participated in supervised visitation with the children; however, she behaved inappropriately during the visits. Mother would tell A.V.M. that she liked J.P.M.'s name better and that A.V.M. was the "ugly one" and J.P.M. was the "pretty one." Mother made comments implying that it would be fine if services were terminated for A.V.M.

At the conclusion of the contested hearing, the juvenile court found that the Department had provided Mother with reasonable services; however, because Mother did not seem to fully understand her case plan, she should be given an additional six months of services. The juvenile court stated that over the next six months, Mother needed to focus on the sexual abuse A.V.M. had suffered, the continued risk to the girls, and the trauma that it caused them. The juvenile court ordered that reunification services be continued for six months and set the matter for an 18-month review hearing.

### C. Contested 18-Month Review Hearing

In the 18-month review report, the Department recommended that reunification services be terminated for Mother, and that the matter be set for a section 366.26 hearing. The Department concluded that it would be detrimental to return the children to Mother's care because Mother continued to demonstrate that she did not understand why her children were removed. Mother did not demonstrate the ability to safely parent and protect the children, and she did not demonstrate that she could meet their emotional and developmental needs. Mother had made minimal progress in her reunification plan.

Mother was homeless at the time but remained employed. She was attending therapy; however, she did not believe that preventing the sexual abuse of her children was one of her treatment goals. Mother was evasive with the social worker and would not discuss her safety plan for the children. Mother participated in supervised visits with the children, but often had conversations with them that were not age appropriate.

4

Mother also brought unapproved adults with her for visits against the Department's advice.

The social worker, Sinita Solis De la Rosa, testified at the contested hearing that Mother had not progressed with her plan such that she understood why her children were removed. Ms. Solis testified that Mother was not able to clearly discuss a safety plan for the children and was defensive when asked about sexual abuse. Mother never acknowledged to the social worker that Father's molestation of A.V.M. was the reason her children were removed. Ms. Solis testified that she could not properly assess Mother's ability to protect her children from future abuse because Mother would not discuss a safety plan.

At the time of the hearing, Mother was homeless and did not provide any address or location where she was staying to Ms. Solis. Ms. Solis did not know where the children would go if they were returned to Mother. Mother testified that she was staying with friends but that she did not tell the social worker who they were or provide an address because she felt the social worker was hard to talk to. Mother asked the social worker by text if it would work to have the children back if she were living in a motel.

Mother testified that she had received materials from the Department about sexual abuse and had discussed them with her therapist. Mother also testified that she discussed a safety plan with her therapist and that she would have her children use safe words to communicate with Mother if they were ever in danger of abuse. Mother stated that she had learned that sexual abuse is wrong, and that through therapy, she had learned to better communicate with her children. Mother believed she could keep her children safe if they were returned to her.

## D. The Court's Order Terminating Reunification Services

At the conclusion of the hearing, the juvenile court terminated reunification services and set the matter for a section 366.26 hearing. The juvenile court found that the children could not be safely returned to Mother, and it was unlikely they could be safely

5

returned to her care within 24 months. Although Mother had made some progress with her plan, she still showed an inability to provide a safe environment for the children. Mother did not have a safety plan other than two safe words. Mother never discussed a clear safety plan with the social worker. The juvenile court noted that Mother was beginning to believe that Father had sexually abused A.V.M. and had discussed this with her therapist; however, Mother did not talk to the social worker about her understanding of sexual abuse. The juvenile court also noted that the children's safety could be impacted by the fact that Mother did not have stable housing. The juvenile court was concerned that Mother had not been providing the social worker with information about where or with whom she was living.

The juvenile court found that the Department had provided reasonable services. The juvenile court also found that there were no exceptional circumstances to continue reunifications services to 24 months. The juvenile court set the matter for a selection and implementation hearing pursuant to section 366.26 for September 14, 2021. Mother filed this timely writ petition and request for stay on July 19, 2021.

## II. DISCUSSION

Mother argues the juvenile court erred when it found that there was a substantial risk of detriment to the children if they were to be returned to her care. She also asserts that the Department did not provide reasonable reunification services.

### A. *Risk of Detriment to the Children if Returned to Mother*

"The overarching goal of dependency proceedings is to safeguard the welfare of California's children." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) "While reunification is the preferred outcome when it serves the interests of both parent and child, no interest is well served by compelling inadequate parents to shoulder responsibilities they are unwilling to accept or unable to discharge." (*Id.* at p. 1234.) At the 18-month review hearing, the juvenile court must return a child to the physical custody of his or her parent unless the court finds that return "would create a substantial

6

risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1).) At the hearing, the Department bears the burden to establish detriment by a preponderance of the evidence. (*Ibid.*) The detriment standard is " 'a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member.' It must mean what it says: that return presents a *substantial* risk of detriment to the child." (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 505.)

In this writ proceeding, we review the record to determine whether substantial evidence supports the juvenile court's finding of detriment. (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864.) "Substantial evidence is that which is reasonable, credible and of solid value." (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238.) "When an appellate court reviews a sufficiency of the evidence challenge, we may look only at whether there is any evidence, contradicted or uncontradicted, which would support the trier of fact's conclusion. We must resolve all conflicts in favor of the court's determination and indulge all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact." (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.) "If there is substantial evidence to support the findings of the juvenile court, we uphold those findings." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Our review of the record with these precepts in mind causes us to conclude that there is substantial evidence to support the juvenile court's finding that returning the children to Mother's care would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. Despite therapy, parenting classes and the provision of materials about sexual abuse, Mother did not demonstrate an understanding of the impact of the sexual abuse of A.V.M. on the children to the social worker, did not articulate an appreciation of the risk that Father presented to them, and

7

would not discuss the sexual abuse with her. Although Mother testified that she learned that sexual abuse was wrong, she could not articulate a safety plan other than the use of safe words for the children to let her know if they were at risk of sexual abuse or harm. While Mother communicated with the social worker during the reunification period, she remained evasive about where she was living, and would not provide an address or names of the people with whom she was staying. As a result, the social worker could not visit where the children would live if they were to return to Mother's care and could not judge whether the location would be safe. Mother continued to have contact with Father despite the fact that he had been arrested and was charged with sexually abusing A.V.M., and was prepared to allow J.P.M. to have contact with Father. The juvenile court's finding of detriment is supported by substantial evidence.

### B. Reasonable Reunification Services

" 'Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]' (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787.) Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children. [Citation.]" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.)

Whether the reunification services offered were reasonable and suitable is judged according to the circumstances of the particular case. (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1501.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

The record shows that reasonable reunification services were provided in this case. Mother was provided with an assessment and individual therapy to address her mental

health needs and to help her understand the trauma the sexual abuse had caused her children. Mother was also provided access to a parenting class and parenting support group, and informational materials about sexual abuse. The Department scheduled supervised visits with the children for Mother and attempted to stay in regular contact with her throughout the reunification period.

While Mother participated in parts of her plan, she did not make substantive progress in improving her ability to keep the children safe. Mother participated in individual therapy but did not fully process or understand the trauma the sexual abuse caused her children. Mother attended supervised visitation but often behaved inappropriately with the children during the visits. Mother started her parent education course but did not provide a certificate of completion for the course. Mother minimally participated in the parent education group. Throughout the reunification period and despite her participating in aspects of her plan, Mother continued to be defensive and confrontational, and refused to acknowledge the sexual abuse and specifically, her failure to protect her children from it and to appreciate the trauma A.V.M. had experienced, as the cause for the children's removal.

Based on the Department's report, the testimony of Ms. Solis and Mother's testimony at the 18-month review hearing, the juvenile court properly found that the Department provided reasonable services and that Mother had failed to make progress in resolving the problems that lead to the children's removal. (§ 366.22, subd. (b)(2).) The juvenile court did not abuse its discretion in terminating reunification services and setting the matter for a section 366.26 hearing after the 18-month review hearing.

## III.    DISPOSITION

The petition for an extraordinary writ and the request for stay are denied. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2).)

9