Filed 7/26/21  S.L. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Juvenile court, rule 8.1115(a), prohibits juvenile courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| S.L., | H048869 |
| Petitioner, | (Santa Clara County Super. Ct. Nos. 19JD026015; 19JD026144) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent; | |
| _____ | |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, | |
| Real Party in Interest. | |

S.L. is the father (Father) of V.G. and M.B., who are aged three and one respectively.  V.G. was taken into protective custody in September 2019 due to domestic violence between Father and the child's mother, D.G. (Mother) and a report that Father had physically abused the child's maternal half-brother, J.M.  Mother was pregnant with M.B. at the time and when the child was born in October 2019, she was taken into protective custody as well.

In February 2021, the juvenile court terminated reunification services, finding that Father had not benefitted from the services offered and the continuing domestic violence between the parents posed a threat to the children.  The juvenile court set a selection and

implementation hearing pursuant to Welfare and Institutions Code section 366.26[1] for June 3, 2021, which we ordered stayed.[2]

Father seeks an extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456.), arguing there is insufficient evidence that returning the children to his care would create a substantial risk of harm to them. Father also asserts the Department failed to provide reasonable services. Finally, Father argues the juvenile court erred when it did not allow him to call a San Joaquin County social worker as a witness at trial and when it denied his request for bifurcation.

For the reasons set forth below, we deny Father's petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

When V.G. and M.B. were adjudged dependents in January 2020, the juvenile court ordered Father to participate in reunification services that included psychological and domestic violence assessments, individual therapy, a parenting without violence class and a 52-week child abuser's class.

Following the juvenile court's order, Father began to participate in his case plan. He completed the psychological evaluation and the domestic violence assessment. Father scored in the "severe problem risk range," in the domestic violence assessment indicating that he could be violent and dangerous. Father also attended six sessions of the parenting without violence class before it was postponed due to the COVID-19 pandemic in mid-March 2020. The class resumed online in mid-May 2020, and Father completed the

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] The juvenile court's jurisdiction and disposition order is pending appeal in case numbers H047781 (Mother's appeal) and H047793 (Father's appeal). Father also filed an appeal of the juvenile court's order after the contested six-month review hearing in case number H048549. We ordered the three appeals considered together for disposition. Because our consideration of the issues raised in Father's writ petition are in part dependent on our assessment of the issues on appeal, we granted Father's request for a stay of the section 366.26 hearing to first resolve the issues on appeal.

[3] We carefully considered the complete record in this case and include only those facts that are relevant to the issues presented in this petition.

class.  As of late June 2020, Father had completed 12 sessions of individual therapy.
Father also completed a conflict and accountability class.  Father completed nine sessions
of the 52-week child abuser's class and stopped attending in mid-May 2020.  Father and
Mother continued to live together during this period.

### 1.  Contested Six-Month Review Hearing

The contested six-month review hearing was held on October 1, 2020.  The
Department recommended continuing reunification services for both parents.  At that
time, the social worker believed there was a continued risk of harm to the children due to
the ongoing violence between Father and Mother.  Both parents continued to deny that
Father had been physically abusive of J.M.

At the conclusion of trial, the court found that returning the children to their
parents' care would create a substantial risk of detriment to their safety, protection, and
physical and emotional well-being.  The court found the children were at risk in part
because of the parents' denial of Father's abuse of J.M.

The court ordered continued reunification services for both parents.

### 2.  Contested 12-Month Review Hearing

The 12-month status review report dated November 25, 2020 recommended that
reunification services be terminated.  The children were doing well living with their
paternal grandparents.  The parents contested the recommendation and the matter was set
for trial.

The trial management conference was held on January 12, 2021.  Father asked to
call the following witnesses:  the children's maternal half-brother, J.M.; the doctor who
examined J.M. when he was taken into protective custody; J.M.'s current caregivers; and
two social workers from San Joaquin County who had investigated referrals related to the
children's half-siblings years earlier.  Father argued the witnesses were relevant to show
that he had not abused J.M.  Father conceded that the witnesses had no information about
the current case involving V.G. and M.B.

3

The juvenile court granted the Department's motion in limine to exclude the witnesses as irrelevant. In making this determination, the juvenile court found that the proposed witnesses were not relevant to the issues before the court at the 12-month review.

On the first day of trial on February 9, 2021, Father requested that the trial be bifurcated so that Mother's issues with the children could be considered separately from his. The juvenile court denied the request as untimely, noting that Father had specifically stated that he was not requesting bifurcation at the trial management conference in January, and two trials would be inefficient given the overlap of evidence.

Julie Walker, the social worker for the case, was the sole witness at the hearing. She reported that Father had completed part of his case plan at the start of the reunification period, including the parenting without violence and conflict and accountability classes. Father had not completed the 52-week child abuser's class.

Ms. Walker testified that there had been three new domestic violence incidents in the nine months leading up to the 12-month status review. The first incident was in May 2020 when Mother locked Father out of the house and he called the police. The second was in September 2020, when the children's maternal half-sister, J.S. called the police because Father and Mother were physically fighting in the house while she was there. The third incident happened in October or November 2020. As a result, the parents were excluded from the 52-week child abuser's class. Ms. Walker stated that under these circumstances, she believed there was a likelihood of ongoing violence between Father and Mother.

Ms. Walker testified that the parents had been dishonest and evasive with her during the reunification period, including refusing to provide her with their address. She believed the children would be at risk if returned to Father because of the continuing domestic violence between him and Mother and the fact that he continued to minimize the seriousness of the violence in the relationship. Ms. Walker further testified that her

4

evaluation of risk would be the same even if the parents lived apart because of Father's minimization of his participation in physical abuse.

### 3.  *The Court's Order Terminating Reunification Services*

On February 10, 2021, the juvenile court terminated reunification services for both parents and set a selection and implementation hearing to choose a permanent plan pursuant to section 366.26.  The juvenile court found that the parents participated in services at the beginning of the reunification period; however, they did not continue with those efforts.  Specifically, Father had not completed the 52-week child abuser's class.  The juvenile court further found that the Department had provided reasonable services and that the parents had not benefitted from the services demonstrated by their continuing minimization of the domestic violence in their relationship.

Following the court's decision to terminate reunification services and set the matter for a section 366.26 hearing, Father filed this petition for extraordinary writ on March 26, 2021.  Father also sought an immediate stay of the June 3, 2021 hearing.[4]

## II. DISCUSSION

Father argues the juvenile court erred when it terminated reunification services and set the matter for a section 366.26 hearing.  He claims the evidence is insufficient to support the finding that returning the children to his custody would create a substantial risk of harm and that the Department failed to provide reasonable services.  Father also asserts the juvenile court erred by failing to bifurcate the trial of the 12-month review hearing, and by not allowing him to call a San Joaquin County social worker as a witness at trial.

### 1.  *Standard of Review*

Section 361.5, subdivision (a) provides in pertinent part:  "For a child who, on the date of initial removal from the physical custody of the child's parent . . ., was under

---

[4] See footnote 2, *ante*.

5

three years of age, court-ordered services shall be provided for a period of six months . . . but no longer than 12 months from the date the child entered foster care. [¶] . . . [¶]. [C]ourt-ordered services may be extended . . . not to exceed 18 months after the date the child was originally removed from physical custody of the child's parent . . . . The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of the child's parent . . . within the extended time period or that reasonable services have not been provided to the parent."

At the conclusion of the review period, "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment." (§ 366.22, subd. (a).)

"[T]o find a substantial probability that the child will be returned to the physical custody of his or her parent . . . and safely maintained in the home within the extended period of time," the court is required to find: "(A) That the parent . . . has consistently and regularly contacted and visited with the child. [¶] (B) That the parent . . . has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent . . . has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)–(C).)

We review the juvenile court's order terminating reunification services for substantial evidence. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688 [no substantial probability child will be returned within extended time period]; *In re Mario C.* (1990) 226 Cal.App.3d 599, 605 [reasonable reunification services]; see also *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75 [substantial evidence review applies even when trial court's standard of proof is clear and convincing evidence].) We review the record

in the light most favorable to the juvenile court's findings, and we draw all reasonable inferences from the evidence to support the disposition. (*In re R.T* (2017) 3 Cal.5th 622, 633.) Issues of fact and credibility are the sole province of the juvenile court. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705 (*Constance K.*).)

### 2. *Substantial Risk of Harm to Children if Returned to Father*

A parent's substantial compliance with a reunification services plan does not preclude a finding that the child would suffer detriment if returned to the parent. (*Constance K.*, *supra*, 61 Cal.App.4th at p. 704.) "[T]he court must also consider progress the parent has made toward eliminating the conditions leading to the children's placement out of home." (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.)

Here, while Father participated in many aspects of his case plan, including the psychological and domestic violence assessment, the conflict and accountability class and the parenting without violence class, he did not make sufficient progress toward eliminating the domestic violence that led to removal of the children from his home. There had been three domestic violence incidents during the nine months leading up to the 12-month review hearing. Father and Mother continued to live together despite the volatility of their relationship and refused to provide the social worker with their address. At the time of the hearing, Father still denied that he had ever physically abused J.M., even though the abuse was substantiated. Finally, Father did not complete the 52-week child abuser's class. The risk of harm to the children from the ongoing domestic violence between the parents remained the same throughout the reunification period.

Father asserts in his petition that the social worker failed to assess whether the children could safely be returned to him if he were living separately from Mother. However, no such formal assessment had been requested by Father or was ordered by the juvenile court. In addition, Ms. Walker testified that the children could not be safely returned to Father even if he were living separately from Mother because of the ongoing denial of his physical abuse of J.M.

7

We find substantial evidence supports the juvenile court's finding by a preponderance of evidence that Father had not made sufficient progress in eliminating the conditions that necessitated the children's removal, such that they would suffer detriment if returned to him.

### 3. Reasonable Reunification Services

Whether the reunification services offered were reasonable and suitable is judged according to the circumstances of the particular case. (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1501.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

Father argues the reunification services were unreasonable in part because they were designed to facilitate co-parenting and did not focus on his individual parenting of the children. Father asserts that Ms. Walker encouraged the couple to continue to work together and co-parent the children during the reunification period. Father argues the social worker's efforts to provide services forced him to remain in a relationship with Mother during reunification, which was unreasonable and harmful to children.

Father's arguments are belied by the record. The evidence shows that Father remained in the relationship willingly, stating at the six-month review hearing that he and Mother were living together peacefully and had no issues. Father represented that he stayed with Mother because they had much in common and she was a good mother; Father did not state that he was being forced to stay in the relationship by the social worker.

The services provided in this case were reasonable and were designed to address the domestic violence between the parents that led to the removal of the children. The Department provided Father with a domestic violence assessment, parenting classes related to domestic violence and a child abuser's treatment program. The domestic violence classes informed Father of the danger domestic violence poses to children and

8

would have discouraged any continuation of a volatile parental relationship. There is no evidence that the services encouraged Father to remain in a violent and destructive relationship with Mother.

In addition to his argument that the Department provided unreasonable reunification services designed to keep him and Mother together, Father makes a blanket assertion that he did not receive the full 12 months of services because of gaps caused by the COVID-19 pandemic. Other than to state the classes were delayed and restarted on Zoom, Father offers no specifics showing the COVID-19 pandemic limited his services. Moreover, because of the delay caused by the pandemic, Father had a longer reunification period. By the date of the 12-month review hearing and the order terminating services in February 2021, Father had been receiving services for V.G. for 17 months, and for M.B. for 14 months. The record shows the Department provided reasonable services for Father in this case.

### 4. Trial Proceedings

Father raises two additional arguments about the proceedings during the trial of the 12-month review. First, he asserts that he was denied due process at the trial because the juvenile court did not allow him to call San Joaquin County social worker Robert Pimentel as a witness. Second, Father argues the juvenile court erred when it refused to bifurcate the trial so that his issues could be considered separately from Mother's. Both of Father's arguments are without merit.

Regarding the court's refusal to allow Father to call Mr. Pimentel as a witness at the hearing, "[t]he due process right to present evidence is limited to relevant evidence of significant probative value to the issues before the court. [Citations.] . . . A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. [Citation.]" (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 133.) Here, Father sought to call Mr. Pimentel to challenge the allegation of the children's maternal half-brother, J.M. that Father had physically abused him. However, J.M.'s credibility

9

was not relevant to whether "the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).) J.M.'s allegations that Father physically abused him were alleged and substantiated at the contested jurisdiction and disposition hearing in January 2019 when the children were detained. The credibility of the allegations was determined at that hearing and was not relevant at the 12-month review. The court thus properly excluded the evidence and did not violate Father's due process rights.

As to Father's bifurcation argument, Father cites no legal authority for his position that the court erred in refusing his request. Father's request to bifurcate was untimely. At the trial management conference prior to trial, Father's counsel specifically stated that Father was not requesting bifurcation. However, on the first day of trial, Father's counsel requested that the hearing be bifurcated so that the issues related to him could be considered separately. The juvenile court denied the request as untimely and found that two trials in this case would be inefficient given the overlap of the evidence as to both parents.

The juvenile court's denial of Father's untimely request to bifurcate the trial was within its discretion to manage dependency proceedings under section 350, subdivision (a)(1), which provides: "The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." The juvenile court did not err when it denied Father's request to bifurcate the trial.

## III.    DISPOSITION

The petition for an extraordinary writ is denied. The temporary stay of the section 366.26 hearing is lifted. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2).)

10

_____
Greenwood, P.J.

WE CONCUR:



_____
Grover, J.




_____
Danner, J.



S.L. v. Superior Court
No: H048869